## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE,<br>             Plaintiff,<br><br>v.<br><br>INDEPENDENCE BLUE CROSS,<br><br>       Defendant | Case No. _____ |

## **COMPLAINT**

Plaintiff, John Doe, by and through his undersigned counsel, Justin Robinette, Esquire, hereby submits and files the instant Complaint against Defendant, Independence Blue Cross, averring in support thereof, as follows:

### I.      **THE PARTIES:**

1.    Plaintiff, John Doe (hereinafter "Plaintiff") is a citizen and resident of Philadelphia, Pennsylvania, residing at ███████████████████████. Plaintiff has redacted his name and address from the pleadings consistent with the Plaintiff's Motion to Proceed Anonymously filed on this same date.

2.    Defendant, Independence Blue Cross (hereinafter "Independence Blue Cross" or "IBX"), is a health insurance company with its headquarters and principal place of business located at 1901 Market Street, Philadelphia, PA 19103.

### II.      **JURISDICTION AND VENUE:**

3.    This Court has jurisdiction over the parties and claims pled herein pursuant to 28 U.S.C. § 1331.

4.   This Court has supplemental jurisdiction over related state law claims pled herein pursuant to 28 U.S.C. § 1367(a).

5.   This Court has jurisdiction over Defendant because Defendant's contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Company v. State of Washington*, 326 U.S. 310 (1945), and its progeny.

6.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

### III.   <u>MATERIAL FACTS:</u>

7.   Plaintiff is a transgender man.

8.   At all times relevant hereto, Plaintiff was clinically diagnosed with gender dysphoria or "GD."

9.   Gender dysphoria is a medical and therapeutic diagnosis "associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning" for a person who is transgender. *See Diagnostic and Statistical Manual of Mental Disorders*, 5th Ed. ("DSM-V" at 302.85); *see also* Coleman, E., *et al.*, Standards of Care for the Health of Transgender and Gender Diverse People, Version 8, *International Journal of Transgender Health*, 23(S1), S1-S260 (2022).

10.  The substantial limitation on Plaintiff's interaction with others is characterized on a regular basis by severe problems in primarily social and occupational functioning of which he was diagnosed on account of his gender dysphoria.

11.  Various medical procedures, including masculinizing body contouring, are available to

assist transgender men to ensure a body that is more in congruence with their gender identity in order to alleviate their gender dysphoria.

12.    Plaintiff purchased what he believed was a "top-tier" policy of health insurance from Defendant.

13.    At all times relevant hereto, Defendant issued and had in place for the Plaintiff a policy of health insurance to insure Plaintiff for healthcare.   A true and correct copy of the "Commercial Medical Policy" applicable to Plaintiff's claim at the time is attached hereto as Exhibit "A."

14.    At all times relevant hereto, Plaintiff complied with all terms and conditions of the insurance policy issued by Defendant for Plaintiff.

15.    Plaintiff sought insurance coverage from Defendant for masculinizing body contouring procedures, which constituted a form of gender affirming care and treatment, in an attempt to alleviate Plaintiff's gender dysphoria.

16.    The masculinizing body contouring procedures sought by Plaintiff included a body lift, abdominoplasty, panniculectomy, thigh lift, and liposuction.

17.    During a pre-operative consultation for the masculinizing body contouring procedures Plaintiff sought, Plaintiff recollects that his surgeon specifically discussed with Plaintiff that Plaintiff had an "A-frame," a female body shape.

18.    Plaintiff believed at the time Plaintiff's surgeon for the masculinizing body contouring procedures at issue had extensive experience in providing gender affirming care and treatment, and this was part of the reason Plaintiff selected that particular surgeon.

19.    Plaintiff's therapist provided a letter of support which established the medical necessity of

masculinizing body contouring procedures for Plaintiff. Upon information and belief, the letter of support from Plaintiff's therapist was provided to Plaintiff's healthcare provider, Mass General Brigham, who then provided the letter to Defendant.

20. On or about November 2022, a preauthorization request was submitted to Defendant on behalf of Plaintiff by Plaintiff's healthcare provider, Mass General Brigham, for coverage of masculinizing body contouring procedures.

21. On or about December 7, 2022, Defendant denied Plaintiff's preauthorization request seeking coverage for masculinizing body contouring procedures even though the procedures constituted a form of gender affirming care and treatment for Plaintiff.

22. Defendant discriminated against Plaintiff and other people who are transgender based on sex, gender identity, gender stereotyping, and disability (gender dysphoria), by refusing to extend insurance coverage to Plaintiff and other people who are transgender suffering from gender dysphoria for masculinizing body contouring procedures as part of the health insurance plan offered to Plaintiff by Defendant.

23. Defendant applied its cosmetic-surgery exclusion in a discriminatory manner against Plaintiff discriminating against him based on his sex, gender identity, gender stereotyping, and disability (gender dysphoria).

24. Defendant improperly applied the definition of a "functional impairment" in Defendant's policy to require a physical impairment.

25. However, at all relevant times, Plaintiff satisfied the requirement of demonstrating a "functional impairment," for medical-necessity purposes consistent with the Policy, by demonstrating functional impairments in social and occupational functioning on account of

his gender dysphoria.

26.    The Commercial Medical Policy of Defendant at the time, attached hereto as Exhibit "A," states that coverage will be provided by Defendant for services that treat gender dysphoria defined in the policy as "[c]linically significant distress or impairment in social, occupational, or other important areas of functioning."  See Commercial Medical Policy, attached hereto as Exhibit "A," at page 3.

27.    However, in practice, Defendant did not apply the functional impairment requirement of the policy properly with respect to Plaintiff and other transgender people who suffer from gender dysphoria.

28.    Defendant, in practice, drew a line between the aforementioned procedures sought as a form of gender affirming care and treatment, and other procedures, and specifically excluded the aforementioned gender affirming procedures for Plaintiff and other transgender people with a gender dysphoria diagnosis.

29.    Defendant, in practice, created a barrier for Plaintiff and other people who are transgender to access medical services to treat their gender dysphoria.

30.    Plaintiff's sex is inextricably tied to the denial of coverage for gender affirming care and treatment.

31.    Defendant intentionally carved out an exclusion based on Plaintiff's transgender status and discriminated against Plaintiff as a transgender person on the basis of sex.

32.    Defendant intentionally created an obstacle for Plaintiff and other people who are transgender to access medical services to treat their gender dysphoria.

33.    Defendant presented Plaintiff with the choice of maintaining natal sex characteristics, or

enduring financial hardship should he seek to transition, which constitutes discrimination against him because he is transgender.

34. Defendant's decision to deny coverage to Plaintiff for medical care and treatment intended to alleviate Plaintiff's gender dysphoria constituted illegal discrimination against him on account of his transgender status, on the basis of sex, on the basis of gender dysphoria, and/or on the basis of impermissible gender stereotypes.

35. Plaintiff expended large sums of money to pay for gender affirming procedures and related treatments not covered by Defendant including approximately $27,471.00 to cover the aforementioned masculinizing body contouring procedures and related treatments.

36. A representative of Plaintiff's healthcare provider, Mass General Brigham, stated to Plaintiff they would not accept a CareCredit credit card for any surgery classified as cosmetic. CareCredit credit cards are intended for medical expenses not otherwise covered by insurance, and offer more advantageous terms like a promotional interest rate of zero interest for a short term, a period of time in which the amount can be repaid without incurring any interest, and/or a reduced interest rate.

37. Plaintiff incurred substantial personal credit card debt in an effort to self-pay on account of the decision by Defendant to deny Plaintiff coverage for gender affirming care and treatment. Plaintiff had to pay balance transfer fees and has faced compounding interest.

38. Defendant forced Plaintiff to file this lawsuit for reimbursement of costs to which Plaintiff was entitled under the Policy and by law even though Defendant knew that its conduct was discriminatory.

39. Defendant sought to avoid paying Plaintiff's legitimate claim for the cost of gender

affirming care and treatment out of financial self-interest.

40.    Plaintiff, through his counsel, requested that Defendant reimburse Plaintiff for the out-of-pocket costs and expenses of the subject procedures, without the need to file the instant litigation.    Defendant refused to reimburse Plaintiff without the filing of the instant litigation.

41.    In spite of two (2) Federal District Court decisions of the United States District Court for the Eastern District of Pennsylvania involving Defendant and of which Defendant was aware, finding that Defendant cannot discriminate without violating the ACA in the application of its cosmetic-surgery exclusion to requests for coverage by people who are transgender seeking medical treatment for their gender dysphoria, Defendant still refuses to reimburse Plaintiff.  *See Doe v. Independence Blue Cross, et al.*, 73 F. Supp. 3d 540 (E.D. Pa. Nov. 21, 2023); *see also Doe v. City of Philadelphia, et al.*, Case No. 24-468, 2024 WL 3634221 (E.D. Pa. Aug. 2, 2024).

**IV.    CLAIMS FOR RELIEF:**

**COUNT I:**
**DISCRIMINATION BASED ON SEX IN VIOLATION OF SECTION 1557 OF THE AFFORDABLE CARE ACT, 42 U.S.C. § 18116**
**(PLAINTIFF, JOHN DOE v. DEFENDANT, INDEPENDENCE BLUE CROSS)**

42.    Plaintiff restates and realleges all previous paragraphs as though fully set forth here.

43.    Congress prohibited sex discrimination in any health care program and activity, including policies of insurance issued on behalf of health insurance companies, at 42 U.S.C. § 18116, also known as Section 1557, the Patient Protection and Affordable Care Act, or Affordable Care Act.

44.    It is believed and therefore averred that Defendant received Federal financial assistance,

including, it is believed, for its health programs or activities, and is therefore a covered entity under Section 1557 of the Affordable Care Act.

45.    It is believed and therefore averred that Defendant is a health insurance issuer and is therefore a covered entity within the meaning of Section 1557 of the Affordable Care Act.

46.    42 U.S.C. § 18116 covers the Defendant as Section 18116 provides, in pertinent part, as follows:

§ 18116. Nondiscrimination.

(a) In general.

Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).

42 U.S.C. § 18116(a).

47.    Section 1557 of the Affordable Care Act, along with its implementing regulations, at 45 CFR § 92, et seq., 81 FR 31375-473 (May 18, 2016), have adopted the ACA non-discrimination rule, which prohibits discrimination based on sex, gender identity, and gender expression, by referring to and incorporating therein the prohibitions of Title IX (20 U.S.C. § 1681) against sex discrimination including its enforcement provisions.

48.    According to 45 CFR § 92.1, "Section 1557 requires the application of the enforcement mechanisms under Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), Title

IX of the Education Amendments of 1972 (20 U.S.C. 1681 <u>et seq.</u>), the Age Discrimination

Act of 1975 (42 U.S.C. 6101 <u>et seq.</u>), and Section 504 of the Rehabilitation Act of 1973 (29

U.S.C. 794) for purposes of violations of Section 1557 and this part."  45 CFR § 92.1

(Subpart A – General Provisions).

49.    45 CFR § 92.2 further provides in pertinent part:

> Except as provided in Title I of the Patient Protection and Affordable Care Act (or any amendment thereto), an individual shall not, on any of the grounds set forth in paragraph (b) of this section, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance (including credits, subsidies, or contracts of insurance) provided by the U.S. Department of Health and Human Services; or under any program or activity administered by the Department under such Title; or under any program or activity administered by any entity established under such Title.

45 CFR § 92.2.

50.    Defendant was required to certify compliance with the prohibitions against sex

discrimination in 42 U.S.C. § 18116 in order to participate in the Commonwealth of

Pennsylvania's State Health Insurance Exchange, under 45 C.F.R. § 92.4:

> <u>Assurances.</u>
>
> (a) Assurances.  An entity applying for Federal financial assistance to which this part applies shall, as a condition of any application for Federal financial assistance, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the entity's health programs or activities will be operated in compliance with section 1557 and this part.  A health insurance issuer seeking certification to participate in an Exchange or a State seeking approval to operate a State Exchange to which section 1557 or this part applies shall, as a condition of certification or approval, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the health program or activity will be operated in compliance with section 1557 and this part.  An applicant or entity may incorporate this assurance by reference in subsequent applications to the Department for Federal financial assistance or requests for certification to participate in an Exchange or approval to operate a State Exchange.

45 C.F.R. § 92.4.

51. Section 1557 provides that "an individual shall not, on the ground prohibited under ...Title IX of the Education Amendments of 1972 (20 U.S.C. 1681, <u>et seq.</u>)" – which prohibits discrimination "on the basis of sex" – "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a).

52. The Department of Health and Human Services' ("HHS") regulations including the ACA non-discrimination rule apply to "covered entities" and prohibit discrimination on the basis of gender identity. 45 C.F.R. §§ 92.4, 92.207.

53. Defendant constitutes an issuer of insurance products, plans, and benefits that receive Federal financial assistance for those products, plans, and benefits.

54. Defendant constitutes a "covered entity" under 45 C.F.R. § 92.4.3.

55. Discrimination on the basis of gender identity, transgender status, gender transition, or gender nonconformity constitutes discrimination on the basis of "sex" under Section 1557.

56. Defendant discriminated against Plaintiff by denying his pre-authorization request for coverage of masculinizing contouring procedures which constituted a form of gender affirming care and treatment.

57. On or about November 2022, a preauthorization request was submitted to Defendant on Plaintiff's behalf by Plaintiff's healthcare provider for masculinizing body contouring procedures which for Plaintiff constituted a form of gender affirming care and treatment.

58. Plaintiff sought coverage for services for gender affirming care and treatment from the Defendant in an attempt to alleviate his gender dysphoria.

59.    On or about December 7, 2022, Defendant denied Plaintiff's preauthorization request seeking coverage for masculinizing body contouring procedures even though the procedures constituted a form of gender affirming care and treatment.

60.    The Commercial Medical Policy of Defendant, attached hereto as Exhibit "A," states that coverage will be provided by Defendant for services that treat gender dysphoria defined in the policy as "[c]linically significant distress or impairment in social, occupational, or other important areas of functioning."   See Commercial Medical Policy, attached hereto as Exhibit "A," at page 3.

61.    However, in practice, Defendant did not apply the functional impairment requirement of the policy properly with respect to Plaintiff and other transgender people who suffer from gender dysphoria.

62.    Defendant, in practice, applied the cosmetic-surgery exclusion contained in its policy in a discriminatory manner against Plaintiff and other people who are transgender.

63.    Defendant, in practice, drew a line between procedures sought as a form of gender affirming care and treatment, and other procedures, and specifically excluded the aforementioned gender affirming procedures for Plaintiff and other transgender people with a gender dysphoria diagnosis.

64.    Plaintiff's sex is inextricably tied to the denial of coverage for gender affirming care and treatment.

65.    Defendant intentionally carved out an exclusion based on Plaintiff's transgender status and discriminated against Plaintiff as a transgender person on the basis of sex.

66.    Defendant intentionally created an obstacle for Plaintiff and other people who are

transgender to access medical services to treat their gender dysphoria.

67.    Defendant presented Plaintiff with the choice of maintaining natal sex characteristics, or enduring financial hardship should he seek to transition, which constitutes discrimination against him because he is transgender.

68.    Plaintiff was directly and proximately caused by Defendant to suffer economic harms and other damages, as described more fully herein on account of the Defendant's discriminatory actions, and for which Plaintiff seeks economic and other damages.

69.    Plaintiff expended large sums of money to pay for gender affirming procedures and related treatments not covered by Defendant including approximately $27,471.00 to cover the aforementioned masculinizing body contouring procedures and related treatments.

70.    Plaintiff incurred substantial personal credit card debt in an effort to self-pay on account of the decision by Defendant to deny Plaintiff coverage for gender affirming care and treatment.  Plaintiff had to pay balance transfer fees and has faced compounding interest.

**WHEREFORE**, Plaintiff, John Doe, requests judgment in favor of Plaintiff and against Defendant, Independence Blue Cross, jointly and severally, in an amount not in excess of $150,000.00 which will fully and fairly compensate Plaintiff for any and all out-of-pocket costs/expenses, credit card interest and fees, attorneys' fees, costs, pre- and post-judgment interest, and any further relief that this Court deems just, proper, and equitable.

**COUNT II:**
**DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF SECTION 1557 OF THE AFFORDABLE CARE ACT, 42 U.S.C. § 18116**
**(PLAINTIFF, JOHN DOE v. DEFENDANT, INDEPENDENCE BLUE CROSS)**

71.    Plaintiff restates and realleges all previous paragraphs as though fully set forth here.

72.    Plaintiff has a disability, gender dysphoria, or "GD," which constitutes a covered disability

within the meaning of Section 1557 of the Affordable Care Act.

73.    Plaintiff's gender dysphoria substantially limits Plaintiff in the major life activities of social

and occupational functioning.

74.    Congress prohibited discrimination in any health care program and activity, including

policies of insurance issued on behalf of health insurance companies, on the basis of

disability, that includes the Defendant, at 42 U.S.C. § 18116, also known as Section 1557,

the Affordable Care Act.

75.    42 U.S.C. § 18116 provides, in pertinent part, as follows:

§ 18116. Nondiscrimination.

(a) In general.

Except as otherwise provided for in this title (or an amendment made
by this title), an individual shall not, on the ground prohibited under
title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.),
title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et
seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.),
***or section 794 of title 29 [the Rehabilitation Act],*** be excluded from
participation in, be denied the benefits of, or be subjected to
discrimination under, any health program or activity, any part of
which is receiving Federal financial assistance, including credits,
subsidies, or contracts of insurance, or under any program or activity
that is administered by an Executive Agency or any entity
established under this title (or amendments).

42 U.S.C. § 18116(a) (emphasis added).

76.    According to 45 CFR § 92.1, "Section 1557 requires the application of the enforcement

mechanisms under Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), Title

IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination

Act of 1975 (42 U.S.C. 6101 et seq.), and Section 504 of the Rehabilitation Act of 1973 (29

U.S.C. 794) for purposes of violations of Section 1557 and this part."  45 CFR § 92.1

(Subpart A – General Provisions).

77.     Defendant was required to certify compliance with the prohibitions against discrimination based on disability as set forth in 42 U.S.C. § 18116 in order to participate in the Commonwealth of Pennsylvania's State Health Insurance Exchange, under 45 C.F.R. § 92.4:

> Assurances.
>
> (a)  Assurances.  An entity applying for Federal financial assistance to which this part applies shall, as a condition of any application for Federal financial assistance, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the entity's health programs or activities will be operated in compliance with section 1557 and this part.  A health insurance issuer seeking certification to participate in an Exchange or a State seeking approval to operate a State Exchange to which section 1557 or this part applies shall, as a condition of certification or approval, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the health program or activity will be operated in compliance with section 1557 and this part.  An applicant or entity may incorporate this assurance by reference in subsequent applications to the Department for Federal financial assistance or requests for certification to participate in an Exchange or approval to operate a State Exchange.

45 C.F.R. § 92.4

78.     The Department of Health and Human Services ("HHS") regulations including the ACA non-discrimination rule apply to "covered entities" and prohibit discrimination on the basis of actual or perceived disability.  45 C.F.R. §§ 92.4, 92.207.

79.     Defendant constitutes a "covered entity" under 45 C.F.R. § 92.4.3.

80.     Plaintiff has been wrongfully subjected to discrimination by Defendant because of his disability (gender dysphoria).

81.     Defendant denied medically necessary gender affirming care and treatment for Plaintiff's gender dysphoria disability.

82.    On or about November 2022, a preauthorization request was submitted to Defendant on Plaintiff's behalf by Plaintiff's healthcare provider for masculinizing body contouring procedures which for Plaintiff constituted a form of gender affirming care and treatment.

83.    On or about December 7, 2022, Defendant denied Plaintiff's preauthorization request seeking coverage for masculinizing body contouring procedures even though the procedures constituted a form of gender affirming care and treatment.

84.    The Commercial Medical Policy of Defendant, attached hereto as Exhibit "A," states that coverage will be provided by Defendant for services that treat gender dysphoria ("GD") defined in the policy as "[c]linically significant distress or impairment in social, occupational, or other important areas of functioning." See Commercial Medical Policy, attached hereto as Exhibit "A," at page 3.

85.    However, in practice, Defendant did not apply the functional impairment requirement of the policy properly with respect to Plaintiff and other transgender people who suffer from gender dysphoria.

86.    Defendant, in practice, singled out Plaintiff and other people who are transgender who suffer from gender dysphoria for unequal treatment by creating a barrier for them to access medical services to treat their gender dysphoria disability.

87.    Defendant, in practice, drew a line between procedures sought as a form of gender affirming care and treatment, and other procedures, and specifically excluded the aforementioned gender affirming procedures for Plaintiff and other transgender people with a gender dysphoria diagnosis.

88.    Defendant applied the functional impairment exception to its exclusion for cosmetic

procedures in a way that discriminates against diagnoses of gender dysphoria and discriminated against Plaintiff solely on the basis of that diagnosis.

89.    Defendant intentionally created an obstacle for Plaintiff and other people who are transgender to access medically necessary care and treatment to treat their gender dysphoria.

90.    Plaintiff was directly and proximately caused by Defendant to suffer economic harms and other damages, as described more fully herein on account of the Defendant's discriminatory actions, and for which Plaintiff seeks economic and other damages.

91.    Plaintiff expended large sums of money to pay for gender affirming procedures and related treatments not covered by Defendant including approximately $27,471.00 to cover the aforementioned masculinizing body contouring procedures and related treatments.

92.    Plaintiff incurred substantial personal credit card debt in an effort to self-pay on account of the decision by Defendant to deny Plaintiff coverage for gender affirming care and treatment.  Plaintiff had to pay balance transfer fees and has faced compounding interest.

**WHEREFORE**, Plaintiff, John Doe, requests judgment in favor of Plaintiff and against Defendant, Independence Blue Cross, jointly and severally, in an amount not in excess of $150,000.00 which will fully and fairly compensate Plaintiff for any and all out-of-pocket costs/expenses, credit card interest and fees, attorneys' fees, costs, pre- and post-judgment interest, and any further relief that this Court deems just, proper, and equitable.

## COUNT III:
## INSURANCE BAD FAITH PURSUANT TO 42 Pa. C.S. § 8371
## (PLAINTIFF, JOHN DOE v. DEFENDANT, INDEPENDENCE BLUE CROSS)

93.    Plaintiff restates and realleges all previous paragraphs as though fully set forth here.

94. A true and correct copy of the "Commercial Medical Policy" applicable to Plaintiff's claim at the time is attached hereto as Exhibit "A."

95. Plaintiff paid premiums for health insurance coverage that Plaintiff believed would constitute a "top-tier" plan of health insurance.

96. During a pre-operative consultation for the masculinizing body contouring procedures at issue, Plaintiff recollects that his surgeon specifically discussed with Plaintiff that Plaintiff had an "A-frame," a female body shape.

97. Plaintiff believed at the time Plaintiff's surgeon for the masculinizing body contouring procedures at issue had extensive experience in providing gender affirming care and treatment, and this was part of the reason Plaintiff selected that particular surgeon.

98. Plaintiff's therapist provided a letter of support which established the medical necessity of masculinizing body contouring procedures for Plaintiff.  Upon information and belief, the letter of support from Plaintiff's therapist was provided to Plaintiff's healthcare provider, Mass General Brigham, who then provided the letter to Defendant.

99. On or about November 2022, a preauthorization request was submitted to Defendant on Plaintiff's behalf by Plaintiff's healthcare provider for masculinizing body contouring procedures which for Plaintiff constituted a form of gender affirming care and treatment.

100. On or about December 7, 2022, Defendant denied Plaintiff's preauthorization request seeking coverage for masculinizing body contouring procedures even though the procedures constituted a form of gender affirming care and treatment.

101. The Commercial Medical Policy of Defendant, attached hereto as Exhibit "A," states that coverage will be provided by Defendant for services that treat gender dysphoria defined in

the policy as "[c]linically significant distress or impairment in social, occupational, or other important areas of functioning."    See Commercial Medical Policy, attached hereto as Exhibit "A," at page 3.

102.    However, in practice, Defendant did not apply the above provision properly with respect to Plaintiff and other transgender people who suffer from gender dysphoria.

103.    Defendant failed to fairly and properly evaluate Plaintiff's pre-authorization request resulting in the denial of medically necessary gender affirming care and treatment to Plaintiff.

104.    Defendant acted for the purpose of protecting and serving Defendant's own financial self-interest to avoid paying Plaintiff's legitimate claim for the costs of gender affirming care and treatment.

105.    Defendant did not have a reasonable basis to deny Plaintiff's claim.

106.    Defendant acted with reckless disregard of the lack of a reasonable basis for denying Plaintiff's claim.

107.    Defendant's actions committed against the Plaintiff and other members of the transgender community were callous and reckless.

108.    Plaintiff incurred substantial personal credit card debt in an effort to self-pay on account of the decision by Defendant to deny Plaintiff coverage for gender affirming care and treatment.

109.    Plaintiff expended large sums of money to pay for gender affirming procedures and related treatments not covered by Defendant including approximately $27,471.00 to cover the aforementioned masculinizing body contouring procedures and related treatments.

110.    Plaintiff had to pay balance transfer fees and has faced compounding interest.

111.    As a direct and proximate result of Defendant's unfair and bad-faith insurance practices committed against Plaintiff, Plaintiff suffered damages including but not limited to out-of-pocket costs and expenses paid for the subject procedures, credit card interest and fees, and attorneys' fees and costs.

112.    Plaintiff requests all damages available under 42 Pa. C.S. § 8371(1) on account of Defendant's unfair and bad-faith insurance practices committed against Plaintiff, including interest on the amount of the claim from the date the claim was made by Plaintiff in an amount equal to the prime rate of interest plus 3%.

113.    Defendant's unfair and bad-faith insurance practices committed against Plaintiff warrant the imposition of punitive damages against Defendant pursuant to 42 Pa. C.S. § 8371(2).

114.    Plaintiff requests attorneys' fees and costs from Defendant pursuant to 42 Pa. C.S. § 8371(3).

115.    At all times relevant hereto, Defendant acted with discriminatory purpose.  Defendant acted with the intent to discriminate against Plaintiff based on his transgender status.

116.    Defendant, in practice, applied the cosmetic-surgery exclusion in a discriminatory manner against Plaintiff and other people who are transgender for the improper purpose of preventing Plaintiff and other people who are transgender from being able to access gender affirming care and treatment to treat their gender dysphoria.

117.    Defendant intentionally created an obstacle for Plaintiff and other people who are transgender to access medical services to treat their gender dysphoria.

118.    Defendant presented Plaintiff and other people who are transgender with the choice of

maintaining natal sex characteristics or enduring financial hardship should they seek to transition.

119.   Defendant acted with conscious or reckless disregard of Plaintiff's Federally protected right to be free from discrimination.

120.   Plaintiff, through his counsel, requested that Defendant reimburse Plaintiff for the out-of-pocket costs and expenses of the subject procedures, without the need to file the instant litigation.   Defendant refused to reimburse Plaintiff without the filing of the instant litigation.

121.   In spite of two (2) Federal District Court decisions of the United States District Court for the Eastern District of Pennsylvania involving Defendant and of which Defendant was aware, finding that Defendant cannot discriminate without violating the ACA in the application of its cosmetic-surgery exclusion to requests for coverage by people who are transgender seeking medical treatment for their gender dysphoria, Defendant still refuses to reimburse Plaintiff.  *See Doe v. Independence Blue Cross, et al.*, 73 F. Supp. 3d 540 (E.D. Pa. Nov. 21, 2023); *see also Doe v. City of Philadelphia, et al.*, Case No. 24-468, 2024 WL 3634221 (E.D. Pa. Aug. 2, 2024).

122.   Defendant forced Plaintiff to file this lawsuit for reimbursement of costs to which Plaintiff was entitled under the Policy and by law even though Defendant knew that its conduct was discriminatory.

123.   Defendant evaded the spirit of the bargain with respect to the contract of insurance between Plaintiff and Defendant.

   **WHEREFORE**, Plaintiff, John Doe, requests judgment in favor of Plaintiff and against

Defendant, Independence Blue Cross, jointly and severally, in an amount not in excess of $150,000.00 which will fully and fairly compensate Plaintiff for any and all out-of-pocket costs/expenses, credit card interest and fees, interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%, punitive damages, attorneys' fees, costs, pre- and post-judgment interest, and any further relief that this Court deems just, proper, and equitable.

### COUNT IV:
### BREACH OF CONTRACT AND OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (PLAINTIFF, JOHN DOE v. DEFENDANT, INDEPENDENCE BLUE CROSS)

124.    Plaintiff restates and realleges all previous paragraphs as though fully set forth here.

125.    Defendant issued and had in place for the Plaintiff a policy of health insurance to insure Plaintiff for healthcare.

126.    Plaintiff was a party to the contract that existed between Plaintiff and Defendant.

127.    Plaintiff paid premiums for health insurance coverage that Plaintiff believed would be a "top-tier" plan of health insurance.

128.    A true and correct copy of what Plaintiff contends constituted the essential terms of the contract between Plaintiff and Defendant, the "Commercial Medical Policy" of Defendant applicable to Plaintiff's claim at the time, is attached hereto as Exhibit "A."

129.    The relevant portion of the Commercial Medical Policy of Defendant, attached hereto as Exhibit "A," states that coverage will be provided by Defendant for services that treat gender dysphoria defined in the policy as "[c]linically significant distress or impairment in social, occupational, or other important areas of functioning." See Commercial Medical Policy of Defendant, attached hereto as Exhibit "A," at page 3.

130.   At all times relevant hereto, Defendant had a duty to apply the above provision of the Policy properly with respect to Plaintiff who sought coverage for procedures that constituted medically necessary care and treatment to alleviate his gender dysphoria.

131.   However, in practice, Defendant did not apply the above provision properly with respect to Plaintiff and other transgender people who suffer from gender dysphoria.

132.   On or about November 2022, a preauthorization request was submitted to Defendant on Plaintiff's behalf by Plaintiff's healthcare provider for masculinizing body contouring procedures which for Plaintiff constituted a form of gender affirming care and treatment.

133.   On or about December 7, 2022, Defendant denied Plaintiff's preauthorization request seeking coverage for masculinizing body contouring procedures even though the procedures constituted a form of gender affirming care and treatment.

134.   Defendant breached Defendant's contractual duty to Plaintiff by failing to properly apply the functional impairment component of the policy according to its terms.

135.   Defendant forced Plaintiff to file unnecessary litigation to secure coverage for medically necessary gender affirming care and treatment to which Plaintiff was entitled under the Policy.

136.   Defendant failed to make payment pursuant to the Policy which has caused Plaintiff to expend large sums of monies in attempts to alleviate his gender dysphoria through medically necessary procedures for which Defendant unlawfully denied coverage.

137.   At all times relevant hereto, Defendant had a duty of good faith and fair dealing with respect to Plaintiff in the Defendant's performance and enforcement of the contract.

138.   Defendant breached the implied covenant of good faith and fair dealing with Plaintiff.

139.    As a direct and proximate result of Defendant's breaches of its contractual duty and of the duty of good faith and fair dealing, Plaintiff suffered damages for which Plaintiff seeks to recover against Defendant for out-of-pocket costs and expenses paid for the subject procedures, and credit card interest and fees.

140.    Plaintiff incurred substantial personal credit card debt in an effort to self-pay on account of the decision by Defendant to deny Plaintiff coverage for gender affirming care and treatment.

141.    Plaintiff expended large sums of money to pay for gender affirming procedures and related treatments not covered by Defendant including approximately $27,471.00 to cover the aforementioned masculinizing body contouring procedures and related treatments.

142.    Plaintiff had to pay balance transfer fees and has faced compounding interest.

**WHEREFORE**, Plaintiff, John Doe, requests judgment in favor of Plaintiff and against Defendant, Independence Blue Cross, jointly and severally, in an amount not in excess of $150,000.00 which will fully and fairly compensate Plaintiff for any and all out-of-pocket costs/expenses, credit card interest and fees, and any further relief that this Court deems just, proper, and equitable.

**<u>JURY DEMAND</u>**

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

DATED: <u>11/05/2024</u>                          Respectfully submitted,

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829

23

One Liberty Place,
1650 Market Street, Suite 3600
PMB #2494
Philadelphia, PA 19103
Tel: (267) 595-6254
Fax: (267) 592-3067
Justin@JRobinetteLaw.com

*Attorney for Plaintiff*

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

United States of America that the foregoing is true and correct.

DATED: 10/31/24    BY: _____