**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DOE, | : |
| Plaintiff, | :   **Case No. 2:24-cv-05916-KNS** |
| | : |
| | : |
| v. | : |
| | : |
| INDEPENDENCE BLUE CROSS, | : |
| | : |
| Defendant. | : |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2025, upon consideration of the Motion of Defendant, Independence Blue Cross, to Dismiss Plaintiff's Complaint, and any response thereto, it is hereby **ORDERED** that Defendant's Motion is **GRANTED** and Plaintiff's Complaint is **DISMISSED** with prejudice.

**BY THE COURT:**

_____
                                             J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN DOE, | : | **Case No. 2:24-cv-05916-KNS** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| INDEPENDENCE BLUE CROSS, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT, INDEPENDENCE BLUE CROSS'S,**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, Independence Blue Cross ("Independence" or "Defendant"), hereby moves this Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's Complaint because (1) Plaintiff has not pled any intentional acts of discrimination to state claims for sex or disability discrimination under the Affordable Care Act, (2) Plaintiff fails to allege facts showing that Independence lacked a reasonable basis for its coverage decision, and (3) Plaintiff fails to plead that Independence breached any relevant provisions of Plaintiff's health benefits plan.  The grounds for this Motion are set forth in full in the accompanying Memorandum of Law.

**WHEREFORE**, Independence respectfully requests that this Court grant its Motion to Dismiss Plaintiff's Complaint, with prejudice, and enter the attached proposed Order.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Date: January 20, 2025

/s/ Joe H. Tucker
Joe H. Tucker, Jr., Esquire
Nancy Fisher Onaderu, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
Attorneys for Defendant,
Independence Blue Cross

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DOE, | : |
| Plaintiff, | : **Case No. 2:24-cv-05916-KNS** |
| | : |
| v. | : |
| | : |
| INDEPENDENCE BLUE CROSS, | : |
| | : |
| Defendant. | : |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, INDEPENDENCE BLUE**
**CROSS'S, MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, Independence Blue Cross ("Independence" or "Defendant"),

respectfully submits this Memorandum of Law in support of its Motion to Dismiss

Plaintiff's Complaint.

## <u>TABLE OF CONTENTS</u>

I.    INTODUCTION…………………………………………………………… 3

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY……………………... 4

III.  ARGUMENT…………………………………………………………… 7

    A. Legal Standard…………………………………………………………... 7

    B. Plaintiff Fails to State a Claim for Sex or Disability Discrimination
       Pursuant to the Affordable Care Act……………………………….…………8

       1. Plaintiff Has Not Alleged Any Intentional Acts of Sex-Based
          Discrimination……………………………………………………….9

       2. Plaintiff Has Not Alleged Any Acts of Disability-Based
          Discrimination…………………………………………………………15

    C. Plaintiff Fails to Allege that Independence Lacked a Reasonable
       Basis for Its Coverage Decision……………………………………….………16

    D. Plaintiff Fails to Allege Facts Showing that Independence Breached
       Any Applicable Terms of the Plan ..……………………………………...…..17

IV.   CONCLUSION…………………………………………………………... 18

## I.    <u>INTRODUCTION</u>

Plaintiff is dissatisfied with Independence's administration of Plaintiff's health insurance coverage in accordance with the terms of Plaintiff's health benefits plan. Plaintiff now seeks reversal of that decision by asserting claims for sex and disability discrimination under the Affordable Care Act ("ACA"), insurance bad faith, and breach of contract and of the implied covenant of good faith and fair dealing.  Plaintiff is a transgender man with gender dysphoria who sought coverage for masculinizing body contouring procedures. He alleges that Independence discriminated against him when it denied coverage for cosmetic surgery that was not medically necessary under the terms of his plan.  No discrimination could have occurred, however, because no person insured under this plan, regardless of sex or gender identity, is eligible for coverage for cosmetic procedures, including masculinizing body contouring procedures, absent certain functional impairments that Plaintiff does not claim to have.  For similar reasons, Plaintiff's claims for insurance bad faith and breach of contract and the implied covenant of good faith and fair dealing also fail because Independence's denial of coverage was reasonable and in compliance with the terms of the Plan.  As a result, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

It bears noting that the procedures sought by Plaintiff here are done to remove excess fat and skin around the waist. In this action, Plaintiff asks the Court to determine that the removal of fat and skin around one's waist is medically necessary when transitioning one's gender, simply because Plaintiff claims to suffer from vague "impairments in social and occupational functioning." While Independence's health benefits plan covers many procedures for the treatment of gender dysphoria, including

the removal of tissue under certain circumstances, the removal of fat and skin around the waist is not considered medically necessary unless other medical conditions are present, such as skin irritation or hernias, which are not alleged here. All members of the health benefits plan at issue are subject to the same exclusions and requirements, regardless of sex or gender identity. Independence does not conform to Plaintiff's stereotypical perception of how men and women should look.  To require coverage for such cosmetic procedures would be tantamount to an adjudication that the size of one's waist is an indication of their masculinity or femininity, or a factor in what makes a man or a woman, and is necessary to transition one's gender. This issue is not for the courts to decide.

## II.    FACTUAL BACKGROUND[1] AND PROCEDURAL HISTORY

Plaintiff is a transgender man who was diagnosed with gender dysphoria ("GD"), a mental health disorder in which Plaintiff experiences "severe problems in primarily social and occupational functioning."  Compl. at ¶ 10.  At all times relevant to his claims, Plaintiff was a member of a health benefits plan administered by Independence (the "Plan").  Plaintiff sought coverage for masculinizing body contouring procedures, including body lift, abdominoplasty, panniculectomy, thigh lift, and liposuction.  Id. at ¶ 16.  Independence denied coverage for these services as not medically necessary under the terms of Plaintiff's Plan.  Plaintiff alleges that Independence incorrectly applied the terms of the Plan and discriminated against Plaintiff because of his gender/sex and disability.  Id. at ¶¶ 23-24.

---

[1] The facts set forth in Plaintiff's Complaint are accepted as true only for purposes of this Motion in accordance with the requirements under Federal Rule of Procedure 12(b)(6). Independence expressly reserves the right to dispute at trial any of Plaintiff's factual allegations that are recited herein.

The Plan at issue covered "medically necessary" gender-affirming care.  See Independence's Medical Policy Bulletin: Gender Affirming Interventions, attached hereto as **Exhibit 1**; Independence's Medical Policy Bulletin: Panniculectomy, Abdominoplasty, Abdominal Lipectomy, and Other Excisions of Redundant Skin, attached as **Exhibit 2**; Personal Choice Health Benefits Booklet, attached as **Exhibit 3**.[2]   With respect to the treatment of GD, all of the following procedures were considered medically necessary and were covered under the terms of the Plan if the member met certain criteria: bilateral mastectomy; bilateral reduction mammoplasty; breast augmentation; nipple reconstruction; genital reconstructive surgery; facial and neck reconstructive interventions; gender affirming voice modification; hair removal/electrolysis; puberty-suppressing hormones; continuous hormone-replacement therapy; and certain garments.  Ex. 1 at pp. 1-2.  The Plan also covered "[g]ender-specific services [that are] medically necessary for transgender individuals as appropriate to their anatomy (e.g., mammograms, prostate cancer screening)."  Id. at p. 2.

There were, however, limits on what the Plan covered. The Plan had a general benefit contract exclusion for "cosmetic" procedures. Ex. 3 at pp. 21 and 77.  Cosmetic procedures are defined as those done "to improve the appearance of any portion of the body, but [are] not expected to produce any significant improvement to physiologic function."  Id.  In the context of gender affirming care, this general exclusion is further

---

[2] Although Plaintiff references the Medical Policy Bulletin and his health benefits plan throughout the Complaint, Plaintiff did not attach all relevant portions of these documents to the Complaint. The Third Circuit has held that the Court may refer to an "undisputedly authentic document" in a ruling on a Motion to Dismiss if it is referenced in plaintiff's complaint and attached to defendant's motion without converting the motion to a motion for summary judgment, so far as neither party disputes its authenticity.  See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); see also Pryor v. NCAA, 288 F.3d 548, 560 (3d Cir. 2002).

discussed in the Medical Policy Bulletin, which states in its "Potentially Cosmetic"

section:

> The following procedures/therapies may be performed in combination with other surgeries and are considered cosmetic or potentially cosmetic services, unless medical necessity demonstrating a functional impairment can be identified. Services that are cosmetic, following medical necessity review, are a benefit contract exclusion for all products of the Company and, therefore, not eligible for reimbursement consideration.

Ex. 1 at p. 2. The list of procedures/therapies that were considered cosmetic or

potentially cosmetic include, for example, abdominoplasty, body contouring procedures

(e.g., liposuction, lipectomy), and excision of redundant skin. Id. The Medical Policy

Bulletin further explains the exclusion of these cosmetic procedures and describes the

criteria that must be met for such services to be considered medically necessary, which

Plaintiff does not allege to have met here. See Ex. 2 at p. 1. Panniculectomy, the

removal of fat and skin from the lower abdomen, is a procedure not covered for any

member of the plan unless determined to be medically necessary due to the existence

of certain associated medical conditions listed in the Plan. Id. Abdominoplasty, the

removal of excess fat and skin from the middle and lower abdomen, is also a contract

benefit exclusion for all participants and requires the existence of certain conditions to

be considered medically necessary. Id. As the Bulletin makes clear: "Cosmetic

services are those provided to improve an individual's physical appearance, from which

no significant improvement in physiologic function can be expected. *Emotional and/or

psychological improvement alone does not constitute improvement in physiologic

function.*" Id. (emphasis added).

Plaintiff does not allege, and did not submit to Independence, any evidence of

physiologic functional impairments; nor does the Complaint allege any facts regarding

6

any of Plaintiff's claimed social or occupational functional impairments.  As such,

Independence properly denied coverage to Plaintiff for the procedures he requested

based on the plain language of the Plan.  Instead of appealing Independence's decision

through the administrative processes outlined in his Plan, Plaintiff commenced this

lawsuit, asserting claims for (1) sex discrimination under the ACA, (2) disability

discrimination under the ACA, (3) insurance bad faith under 42 Pa. C.S. § 8371, and (4)

breach of contract and the implied covenant of good faith and fair dealing. All of

Plaintiff's alleged causes of action are devoid of any factual or legal basis for the

reasons set forth below and should be dismissed.

## III.    ARGUMENT

### A.    Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), a plaintiff must plead sufficient facts to state a claim for relief that is "plausible

on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  The plaintiff

must allege facts necessary to make out each element.  See Oakwood Lab'ys LLC v.

Thanoo, 999 F.3d 892, 904 (3d Cir. 2021) (quoting Iqbal, 556 U.S. at 669, 679).

"Conclusory allegations are insufficient to survive a motion to dismiss."  Harris v. St.

Joseph's Univ., No. 13-3937, 2014 U.S. Dist. LEXIS 65452, *3 (E.D. Pa. May 13, 2014)

(citing Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).

**B.    Plaintiff Fails to State a Claim for Sex or Disability Discrimination <u>Pursuant to the Affordable Care Act.</u>**

Plaintiff fails to state a claim for sex or disability discrimination under section 1557 of the ACA, 42 U.S.C. § 18116.  "[W]hile Section 1557 does create a new private right under the Affordable Care Act, the rights of action and corresponding remedies, including all of their limitations, are to be drawn from the four federal civil rights statutes listed in 42 U.S.C. § 18116(a) and applied depending upon the nature of the discrimination alleged by a putative Section 1557 plaintiff."  <u>SEPTA v. Gilead Scis., Inc.</u>, 102 F. Supp. 3d 688, 699 n.3 (E.D. Pa. 2015).  Thus, to succeed on his claim, Plaintiff must plead: (1) discrimination prohibited by Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (discrimination on the basis of race, color, or national origin); Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (discrimination on the basis of sex); the Age Discrimination Act of 1975, 42 U.S.C. § 6101 (discrimination on the basis of age); or Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (discrimination on the basis of disability); and (2) discrimination by a "health program or activity, any part of which is receiving Federal financial assistance . . . ."  42 U.S.C. § 18116(a).  Plaintiff has brought his two ACA discrimination claims pursuant to Title IX (sex discrimination) and the Rehabilitation Act (disability discrimination).  Compl. at ¶¶ 42-92.

Assuming for the purposes of this Motion only that this case involves a "health program or activity…receiving Federal financial assistance," Plaintiff's ACA claims fail because Plaintiff does not allege any acts of intentional discrimination based on sex or disability, as is required by the ACA.  Plaintiff merely makes conclusory allegations of discrimination because Independence did not cover Plaintiff's masculinizing body contouring procedures because Independence deemed the procedures to be cosmetic

8

and not medically necessary.  Compl. at ¶¶ 21-24.  Plaintiff's claim for coverage does not equate to discrimination under the law.  Because Plaintiff cannot make a claim for discrimination based on either sex under Title IX or disability under the Rehabilitation Act, Counts I and II of the Complaint must be dismissed.

### 1.  Plaintiff Has Not Alleged Any Intentional Acts of Sex-Based Discrimination.

To successfully bring a claim under Title IX, Plaintiff must allege, at minimum, that he was discriminated against on the basis of his sex or gender.  McRae v. Sch. Reform Comm'n, No. 17-4054, 2018 U.S. Dist. LEXIS 152364, at *18 (E.D. Pa. Sep. 6, 2018).  Title IX also requires that the discrimination be intentional.  Williams v. Pennridge Sch. Dist., No. 15-4163, 2018 U.S. Dist. LEXIS 205957, at *16 (E.D. Pa. Dec. 4, 2018) ("If a plaintiff is unable to prove intentional discrimination on the basis of… sex, then the plaintiff's claims under…Title IX…must fail.") (citations omitted); see also Doe v. Miami Univ., 882 F.3d 579, 589 (6th Cir. 2018) (a Section 1557 claim under Title IX must allege "sufficient factual allegations to satisfy Twombly and Iqbal in alleging the required element of discriminatory intent."); Weinreb v. Xerox Bus. Servs., No. 16-cv-6823 (JGK), 2020 U.S. Dist. LEXIS 132134, at *7-8 (S.D.N.Y. July 27, 2020) ("[D]isparate impact claims on the basis of sex are not cognizable under Section 1557.") (citing Condry v. UnitedHealth Grp., Inc., 2018 U.S. Dist. LEXIS 111233, 2018 WL 3203046, at *4 (N.D. Cal. June 27, 2018)); Briscoe v. Health Care Serv. Corp., 281 F. Supp. 3d 725, 738 (N.D. Ill. 2017) ("Title IX's enforcement mechanism applies to Plaintiffs' [Section 1557] sex discrimination claim, so their claim fails because Title IX does not allow disparate-impact claims.")).

For example, in <u>Weinreb</u>, the husband-and-wife plaintiffs alleged that the defendants discriminated against the wife on the basis of sex by denying her coverage of certain medications, thereby violating various laws, including section 1557 of the ACA.  <u>Weinreb</u>, 323 F. Supp. 3d at 521.  Specifically, the plaintiffs alleged that Caremark's exclusion of coverage of the wife's treatments discriminated against females who, unlike males, can suffer from global diffuse adenomyosis (an extremely painful disease affecting a woman's uterine tissue).  <u>Id.</u> at 506.  Though "sympathetic to Plaintiff's painful plight," the court found that the plaintiffs' complaint did not allege facts sufficient to find that Caremark intentionally discriminated against the wife because of her sex.  <u>Id.</u> at 510, 515.  More specifically, the court found that ***the plan did not cover the relevant medications for either males or females absent treatment for cancer*** and, thus, defendants' coverage denial did not suggest any sex-based discrimination.  <u>Id.</u> at 517 ("The administrator's refusal to cover fentanyl had nothing to do with the fact that Mr. Weinreb is a male employee and his wife is female: Caremark's differentiation between cancer and non-cancer patients is wholly unrelated to sex.").  Moreover, plaintiffs' ACA claim was dismissed because "Plaintiffs only [made] conclusory assertions that relate[d] to Defendants' failure to cover [the wife's] medications" and alleged "no facts to support a finding that Caremark intentionally discriminated against [plaintiffs]."  <u>Id.</u> at 521.

In the instant case, Plaintiff likewise fails to allege intentional sex-based discrimination.  He broadly alleges, without factual support, that Independence "discriminated against Plaintiff and other people who are transgender" and "intentionally carved out an exclusion based on Plaintiff's transgender status." Compl. at ¶¶ 22 and

10

31.  His support for this alleged discrimination against him and other transgender people lies in the mere fact that Independence denied Plaintiff's request for coverage for masculinizing body contouring procedures, including "body lift, abdominoplasty, panniculectomy, thigh lift, and liposuction." (Id. at ¶ 16).  But in reality, the Plan does not cover these cosmetic procedures for any person, regardless of gender or gender identity, "unless medical necessity demonstrating a functional impairment can be identified."  Ex. 1 at p. 2.  As the Medical Policy Bulletin clearly explains, such services "are a benefit contract exclusion for all products of [Independence] and, therefore, not eligible for reimbursement consideration."  Id.  Thus, like in Weinreb, no individual, regardless of gender or gender identity, would be reimbursed for these procedures absent certain medical conditions.  See id. at 34.  Indeed, coverage is available for any member of the plan who meets certain medical criteria that has no relation whatsoever to the member's sex or gender, such as skin irritation and problems with ambulation.  Ex. 2 at p. 1.   Thus, the denial for coverage of the procedures sought by Plaintiff was not motivated by Plaintiff's gender or gender identity and cannot provide the basis of a discrimination claim under section 1557 of the ACA.

The case of Polonczyk v. Anthem Blue Cross BlueShield, 586 F. Supp. 3d 648 (E.D. Ky. Feb. 23, 2022) is particularly instructive in this analysis.  In Polonczyk, the plaintiff was a transgender woman whose insurance plan, like the Plan in the instant case, generally covered procedures, treatments, and related services designed to alter a participant's physical characteristics from his or her biologically determined sex to those of another sex.  Id. at 650.  However, the Polonczyk plaintiff submitted a pre-certification request for facial surgery that was denied because the cosmetic surgeries

she requested were defined in the plan as "medically unnecessary." Id. at 653. The

plaintiff sued Anthem under ERISA and the ACA. Regarding her ACA claim, the court

held that the plaintiff failed to "identify any documents or actions that support a finding

that Plaintiff was discriminated against because of her transgender status." Id. at 656

(emphasis added). The Polonczyk court further found that the plaintiff's allegations,

even when read in connection with the plan document, did not "plausibly allege

intentional discrimination." Id. at 656. The Polonczyk plaintiff claimed that the plan

categorically excluded medically necessary surgeries for patients who had undergone

or were planning to undergo gender reassignment surgery, and that this drew a

"classification that discriminates based on transgender status and gender

nonconformity." Id. The court, however, rejected the plaintiff's argument, stating: "[t]he

Plan itself categorizes certain surgeries as cosmetic, regardless of a participant's status

as a transgender or non-transgender individual." Id. The plan stated that cosmetic

surgery "primarily for the purpose of changing the appearance of any part of the body to

improve appearance or self-esteem" would not be covered and that exclusion applied to

every plan participant regardless of sex. Id. Thus, the court held: "***Given the Plan's***

***limited allowance for any cosmetic procedures, regardless of a participant's***

***status as a transgender or non-transgender individual, it cannot be inferred that***

***by simply denying benefits to Plaintiff, Defendants were intentionally***

***discriminating on the basis of sex***." Id. at 657 (emphasis added). The court,

therefore, dismissed the plaintiff's complaint in full.

Independence's Medical Policy Bulletin states that "services that are cosmetic,

following medical necessity review, are a benefit contract exclusion for all products of

the Company and, therefore, not eligible for reimbursement consideration."  Ex. 1 at p.

2.  This Court should follow the <u>Polonczyk</u> court's holding, finding that it cannot infer that

Independence intentionally discriminated on the basis of sex simply because

Independence denied benefits to Plaintiff because the exclusions here, like the

exclusions in <u>Polonczyk</u>, apply "to every Plan participant, regardless of their sex."  586

F. Supp. 3d at 656-57.

In contrast, this case is nothing like other cases involving categorical exclusions

of treatment for gender dysphoria, in which courts have found that the exclusion was

discriminatory.  For instance, in the case of <u>C.P. v. Blue Cross Blue Shield</u>, the

insurance policy at issue contained exclusionary language providing that transgender

reassignment surgery was not covered at all, unless it was considered medically

necessary for a diagnosis *other than for gender-affirming care.*  536 F. Supp. 3d 791,

796 (W.D. Wash. 2021) (emphasis added).  The Washington District Court denied

defendant's motion to dismiss, holding that plaintiff provided enough factual support to

allege that this carve-out constituted intentional discrimination due to plaintiff's sex, thus

properly stating a claim of sex discrimination under Section 1557.  <u>Id.</u> at 797.  Despite

Plaintiff's conclusory allegations, no such carve out exists in the Plan at issue here.

Similarly, in <u>Hammons v. Univ. of Md. Med. Sys. Corp.</u>, the Maryland District

Court recently found that a hospital's blanket policy of denying gender-affirming

treatment for transgender patients (specifically, a hysterectomy that was cancelled for a

transgender man because it was intended to treat his gender dysphoria) violated

Section 1557 because it was discrimination on the basis of sex.  No. DKC 20-2088,

2023 U.S. Dist LEXIS 2896, *15 (D. Md. Jan. 6, 2023).  As the court there stated:

…the policy at issue here is not a neutrally-applicable prohibition on all hysterectomies, or even a prohibition on hysterectomies for the purpose of elective sterilization—it is a prohibition on hysterectomies (along with other gender-affirming surgeries) that are sought by transgender patients for the purpose of treating gender dysphoria…Thus, the true basis for Defendants' refusal to perform the surgery was Mr. Hammons's transgender status.

Id. at *16-17.

Plaintiff attempts to analogize this case to Doe v. Independence Blue Cross, which is inappropriate.  No. 23-1530, 2023 U.S. Dist. LEXIS 209063, at *11 (E.D. Pa. Nov. 21, 2023).  When the Doe court, on a motion to dismiss, was reviewing an appeal determination letter by an Independent Review Organization (IRO) unaffiliated with Independence, the court was troubled by the language used by the IRO.  This language, which noted the IRO's impression of the facial characteristics of the plaintiff, went above and beyond the medical policy and used language not found in the plan design or the medical policy.  As such, the court was concerned and questioned whether the denial was based on "the personal impression of whether or not you look female."  Id. at *12.  Consequently, the court could not determine whether the plaintiff had sufficiently pled discrimination.  Plaintiff here has not alleged, and cannot allege, that the denial in this instance was based upon any "impression" or "perception" of Plaintiff.  Plaintiff's Complaint alleges only that Independence denied coverage for cosmetic procedures that it determined to not be medically necessary absent a "functional impairment" in accordance with the terms of the Plan.  Compl. at ¶¶ 21-24.

Furthermore, in all these cases, the courts found the exclusions in coverage were discriminatory because they were explicitly based on sex.  However, in the instant case, there is no such categorical exclusion for treatment of transgender

14

patients or patients with GD.  In fact, the operative Plan covered many procedures for the treatment of GD and excluded coverage for cosmetic procedures for all members of the Plan absent certain functional impairments or medical criteria.  Because Plaintiff has not (and cannot) state a claim for intentional discrimination based on sex, Count I of the Complaint must be dismissed.

### 2.   Plaintiff Has Not Alleged Any Acts of Disability-Based Discrimination.

For similar reasons as set forth above, Count II of Plaintiff's Complaint, asserting discrimination based on disability in violation of the ACA, should be dismissed.  To state a claim of disability discrimination under the ACA, a plaintiff must satisfy the elements of Section 504 of the Rehabilitation Act by demonstrating that he is (1) a qualified individual with a disability (2) who was denied the benefits of a program or activity which receives federal funds (3) on the basis of his disability.  SEPTA v. Gilead Scis., Inc., 102 F. Supp. 3d 688, 699 (E.D. Pa. 2015) (citing Calloway v. Boro of Glassboro Dep't of Police, 89 F. Supp. 2d 543, 551 (D.N.J. 2000)).

Assuming, for the purpose of this argument only, that Plaintiff is a qualified individual with a disability (GD), and that the Plan could be deemed a "program or activity which receives federal funds," Plaintiff has not alleged any facts sufficient to show that he was denied coverage because of his disability.  Instead, Plaintiff simply concludes that Independence "discriminated against Plaintiff and other people who are transgender based on…disability (gender dysphoria), by refusing to extend insurance coverage…for masculinizing body contouring procedures… ."  Compl. at ¶ 22. Moreover, under the Rehabilitation Act, a plaintiff's disability must be the sole cause of the discriminatory action.  Furgess v. Pa. Dep't of Corr., 933 F.3d 285, 291 n.25 (3d Cir.

15

2019) (citations omitted).  Plaintiff has not presented any evidence that Independence denied his claim *because* he sought to treat his GD, much less that it was the only factor contributing to the denial of his claim.  To the contrary, as set forth more fully above, the operative Plan covers many procedures for the treatment of GD and excludes coverage for cosmetic procedures for all members of the Plan absent certain criteria.  Thus, Plaintiff's claim for disability discrimination fails and Count II of the Complaint must be dismissed.

   **C.    Plaintiff Fails to Allege that Independence Lacked a Reasonable Basis for Its Coverage Decision.**

   Under the Pennsylvania insurance bad faith statute, 42 Pa.C.S. § 8371, a plaintiff must aver sufficient facts to show that "the insurer lacked a reasonable basis for denying benefits" and that it "knew or recklessly disregarded a lack of a reasonable basis in denying the claim."  Terletsky v. Prudential Prop. & Cas. Ins. Co., 437 Pa. Super. 108, 649 A.2d 680, 688 (Pa. Super. 1994). "Bad faith" requires a showing of "frivolous or unfounded refusal" to pay the proceeds of a policy; "mere negligence or bad judgment is not bad faith." Id.

   Plaintiff concludes that "Defendant did not have a reasonable basis to deny Plaintiff's claim." Compl. at ¶ 105.  But Plaintiff fails to allege any facts showing that Independence frivolously denied Plaintiff's claim for coverage or did so without reason. The Eastern District of Pennsylvania routinely dismisses bad faith claims "when the insured pleads barebones, conclusory allegations."  See Griffin v. State Farm Auto Ins. Co., No. 24-4214, 2024 U.S. Dist. LEXIS 155235, at *9 (E.D. Pa. Aug. 29, 2024) (dismissing a complaint where the plaintiff failed to plead the "who, what, where, when, and how the alleged bad faith conduct occurred").  As Plaintiff admits, Independence

16

informed Plaintiff of the reason for its denial: that it was based on the terms and conditions of Plaintiff's Plan excluding cosmetic procedures absent certain criteria. Id. at ¶¶ 21-24, 100. Plaintiff "cannot sue the insurer for bad faith when the insurer is following the unambiguous terms of their insurance contract." Griffin, No. 24-4214, at *1. Plaintiff's disagreement with this decision and baseless claim that Independence "did not apply the above provision properly" does not amount to bad faith. Plaintiff does not allege that he met any of the criteria outlined in the Plan for any of the procedures he requested and that Independence denied coverage anyway. Plaintiff's claim for bad faith is based on the mere denial of coverage to a transgender person without alleging any facts showing that Plaintiff's gender identity motivated Independence's decision. Thus, Plaintiff's claim for insurance bad faith fails and Count III of the Complaint must be dismissed.

### D.    Plaintiff Fails to Allege Facts Showing that Independence Breached Any Applicable Terms of the Plan.

A party asserting a breach of contract claim under Pennsylvania law must demonstrate "(1) the existence of a contract; (2) a breach of duty imposed by the contract; and (3) resultant damages." Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003). "In Pennsylvania, a duty of good faith and fair dealing is implicit in an insurance contract." Tatum v. Progressive Ins. Co., No. 24-cv-02086, 2024 U.S. Dist. LEXIS 122579, at *5 (E.D. Pa. July 12, 2024) (citation omitted).

Plaintiff has failed to allege that Independence breached any of the relevant terms in his Plan. In support of Plaintiff's breach of contract claim, Plaintiff cites to only one provision in the Plan that defines "gender dysphoria" using several criteria and states, regarding the *diagnosis* of gender dysphoria, that "the condition must also be

17

associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning." Compl. at ¶ 129; Ex. 1 at p. 2. This section of the Plan pertains *only* to the diagnosis of GD and not to the types of treatment of GD covered under the Plan. See id. Further, right before this language, the Plan provides: "***Subject to the terms and conditions of the applicable benefit contract***, gender affirming interventions are covered under the medical benefits of the Company's products ***when the medical necessity criteria listed in this medical policy are met***." Id. Realizing he has no basis for this claim, Plaintiff mischaracterizes this provision of the Plan, which is irrelevant since Plaintiff's GD diagnosis is not in dispute here. However, Plaintiff does not, and cannot, allege any terms regarding coverage or treatment that Independence breached. As set forth above, Independence denied coverage in accordance with the unambiguous terms of Plaintiff's Plan requiring certain criteria, including physiologic functional impairments, be met for cosmetic procedures to be covered. See Exs. 1 and 2. Thus, Plaintiff's claim for breach of contract and good faith and fair dealing fails and Count IV of the Complaint must be dismissed.

**IV.**     **CONCLUSION**

For the foregoing reasons, Defendant, Independence Blue Cross, respectfully requests that this Court grant its Motion to Dismiss and enter the attached proposed Order.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Date: January 20, 2025          /s/ Joe H. Tucker_____
Joe H. Tucker, Jr., Esquire
Nancy Fisher Onaderu, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
Attorneys for Defendant,
Independence Blue Cross

## <u>CERTIFICATE OF SERVICE</u>

I, Joe H. Tucker, Esquire hereby certify that on this date, a copy of the foregoing document was electronically filed through the Court's ECF System, which automatically generates a notice of filing that will be sent to all counsel of record and grant access to this filing through the Court's system, thereby serving it upon all parties.


**TUCKER LAW GROUP, LLC**


Date: January 20, 2025          /s/ Joe H. Tucker_____
                               Joe H. Tucker, Esquire